*Litchfield,*
July, 1849.

Harwinton
*v.*
Catlin.

The town of HARWINTON *against* CATLIN and others:

IN ERROR.

Where the parties to a petition for the alteration of a highway, appeared before the county court, and agreed to a reference of the petition to the county commissioners, which was ordered accordingly; it was held, that the finding of such agreement was equivalent to a finding that the parties did not agree as to the judgment to be rendered. It is, at least, incumbent upon the party complaining of the proceeding, to show the contrary.

Where the commissioners had acted under such reference, and reported their proceedings to a subsequent term of the court, at which term the petition, with the proceedings thereon, was, by agreement of the parties and the order of the court, recommitted to the commissioners, to be by them further proceeded with and determined; it was held, that the objection that it did not appear, that the parties did not agree, came too late.

The question of the necessity and expediency of laying out or altering highways, belongs exclusively to the county commissioners; and no testimony is admissible, before the county court, to show, that there is a better route for a road than the one laid out.

Where a remonstrance to a report of commissioners, alleged, as grounds for setting aside such report, certain matters, in four divisions; the petitioners replied, that such matters were not true; and the court found certain facts relating to the matters set forth in the two first divisions of the remonstrance, and then added, "that as to the residue of the remonstrance, so far as it is inconsistent with said report, the court find it not true;" after which, final judgment was rendered, establishing the road laid out; it was held, that such judgment was not erroneous, on the ground that it did not answer the whole issue closed.

THIS was a petition, brought by *Catlin* and others, to the county court, at its term in *December,* 1845, praying for alterations in the highway leading from the *North-East* part of *Harwinton,* to *Bristol.* The petition alleged, that the present highway was circuitous and hilly; that it might be greatly improved, by certain alterations particularly specified; that it was a road of considerable travel, which would be greatly increased, by the proposed alterations; that such alterations were required, by common convenience and necessity; that the whole of the new highway prayed for, lay within the town of *Harwinton;* that the select-men of that town had been duly requested to lay out said proposed highway, and make said alterations, especially on the 5th of *May,* 1845; and that they wholly neglected and refused so to do.

The parties appeared; and by their agreement and the

order of the court, the petition was referred to the county commissioners, to be by them heard and decided. At the term of the county court in *April*, 1846, the commissioners made their report, in which they found the facts alleged in the petition to be true, and that the road prayed for was of common convenience and necessity, but that they were unable, from want of time, to survey and lay out the road, and had, at the request of the parties, adjourned further proceedings until the 20th of *April*. By agreement of the parties, and by the order of the court, the petition, with the proceedings thereon, was recommitted to the county commissioners, to be by them further proceeded with and determined. At the term of the county court in *October*, 1846, the commissioners made their report, laying out the road. Against the acceptance of this report the town of *Harwinton*, respondents to the petition, remonstrated; stating, as grounds of remonstrance, the following matters: 1st, That the powers of the commissioners who made the report, ceased, on the 20th day of *June*, 1846; that the General Assembly, at its session in *May*, 1846, appointed other persons commissioners, who were duly qualified to act in that capacity; and that the report was not made or returned to the court, until *October* term, 1846.

2dly, That on the hearing before the commissioners, it was claimed, by the respondents, that there was another route, over which a public highway might have been laid and established in the town of *Harwinton*, at much less expense than the one prayed for, which would, to a much greater degree, have promoted the public, as well as private convenience, and which would, if laid out and established, have entirely superseded the necessity of the road surveyed, and laid out in the report; and that, if the commissioners found these facts to be true, they ought to deny the prayer of the petition; and that the commissioners, having viewed the route so proposed by them to the respondents, found all the facts above stated, respecting said route, to be true, but were of opinion, that they were bound to survey and lay out a road *as prayed for in the petition*.

3dly, That the commissioners, at their meeting on the 31st of *March*, 1846, had decided to lay out the road which they afterwards surveyed and laid out; yet at their meeting

on the 28th of *April*, 1846, the respondents requested them to review the route or lands over which a road might be laid *within the limits designated by the petition*, and claimed, that a more feasible route might there be found, which would be less hilly, less expensive in its construction, and of greater public convenience and necessity, than the one which they had concluded to survey and lay out ; that the commissioners thereupon examined, more particularly than they had previously done, the route so shown to them, by the respondents, and found, that by altering the location of the road, in the manner claimed by the respondents, the location would be more highly beneficial both to the public and to the individuals interested in the petition, and in all respects preferable ; but the commissioners were of opinion, that the court, at its term in *April*, 1846, had empowered them only to survey and lay out a road where they had, at their first meeting, contemplated to survey and lay it out.

4thly, That the commissioners had not, at the time of laying out said road, any power to act in the premises; not having taken the oath required by law previous to the doing of the acts remonstrated against.

In answer to this remonstrance, the petitioners averred, that the matters therein alleged were not true.

The court found, that the report of the commissioners was duly signed and completed, before the 20th day of *June*, 1846, and during their continuance in office, though the report was not returned into court until the term thereof in *October*, 1846, that being the first term after the completion of the report : that said commissioners, upon their appointment, and before entering upon the discharge of their duties as county commissioners, took the oath by law provided for such commissioners, but were not otherwise sworn, in reference to this proceeding : that as to the residue of the remonstrance, so far as it is inconsistent with said report, the court found it not true. The court thereupon found the facts, as stated in the petition and report, to be proved and true ; the report was accepted ; and it was adjudged, that said highway, as surveyed and laid out, by the commissioners, should be and remain a public highway, pursuant to the statute ; and that the town of *Harwinton* should, on or before the 1st *Monday* of *September*, 1848, when the highway was

to be opened, pay the several sums therein specified to the persons therein named, as damages accruing to them respectively, by the laying-out of said highway.

On the trial of the remonstrance, the respondents offered *Joseph J. Gaylord*, Esq., one of the commissioners, as a witness, to prove, that near to and in the vicinity of the road surveyed and laid out, there was another route, over which a highway might be laid, which would better accommodate the public, and be, in other respects, preferable. To the admission of this witness, for the purpose specified, the petitioners objected ; and the court sustained the objection, and rejected the witness.

The respondents thereupon brought a writ of error, in the superior court ; which was reserved for the advice of this court.

*J. H. Hubbard* and *G. H. Hollister*, for the plaintiffs in error, contended, 1. That the court had no power to refer the petition to the commissioners, at its *April* term, 1846 ; and the commissioners could not adjourn to a time beyond the sitting of the court. The commissioners having heard the parties, and made their report, the court could not send the cause back, merely to enable the commissioners to survey and lay out the road. *Stat.* 422. If the commissioners have power to adjourn to a time beyond the court, they may do so indefinitely : and in that way, the proceeding may be placed beyond the reach of the court, and the parties may be unreasonably taxed and delayed. The report states, that the adjournment was by agreement of parties. This is not so in fact ; and there is no legal evidence of it ; for the commissioners had no power or jurisdiction to find such fact. Neither had the court any power to find, and order to be recorded as a fact, that the parties *consented* to the second reference.

2. That the powers of the commissioners expired before the report was returned. There is no report, without a return ; and the return is just as much an official act as any other duty respecting it.

3. That the court manifestly erred, in rejecting the testimony of *Joseph J. Gaylord*, Esq., who was offered to prove the facts set up in the remonstrance ; particularly, that there

*Litchfield,*
July, 1849.

Harwinton
*v.*
Catlin.

*Litchfield,*
July, 1849.

Harwinton
*v.*
Catlin.

was a better route, which, if laid, would better accommodate, in all respects, every public and private interest. This testimony was offered with a view to show, that the proceedings and conduct of the commissioners, at the hearing before them, were irregular and improper. It is averred, that there was a better route, and that the only reason why the prayer of the petition was not denied, or an adverse report made, was, that the commissioners were of opinion, that they could not legally take that fact into consideration, but supposed they were bound to lay the road prayed for, if they found it to be of common convenience and necessity ; and the testimony of the witness was important to show these facts. If it would conduce to prove these facts, or any other important facts set up in the remonstrance, it was error in the court to reject it.

4. That the court erred, in not answering or finding, or negativing the issues closed on the facts set up under the second and third heads of the remonstrance. The court only find, that the residue of the remonstrance, so far as the same is inconsistent with the report, is untrue. Now, there is no one allegation in the remonstrance, which is inconsistent with the report. If the commissioners had negatived the petition, for the reasons set up in the second clause of the remonstrance, or had made the alteration set up in the third clause, would their proceedings have been erroneous? If not, then the court erred, by rejecting the testimony of *Gaylord*, and in not answering the issue closed on those two clauses of the remonstrance.    *Nichols* v. *Palmer*, 5 *Day*, 47. 53.    *Sanford* v. *Sanford*, 2 *Day*, 559.    1 *Sw. Dig.* 784. 1 *Day*, 189.    2 *Root*, 254.

*Seymour*, (*a*) for the defendants in error, contended, 1.

(*a*) This was the last of several cases argued at this term, in which *Leman Church*, Esq., was originally concerned, and in which he would have appeared as counsel before this court, had his life and health been preserved. But he died, at *Canaan*, *July* 9th, 1849, about three weeks before the commencement of the term.

He was the third son of *Nathaniel Church*, Esq., of *Salisbury*, in this state, and a younger brother of the Hon. *Samuel Church*, the present Chief Justice. He was a lineal descendant, in the sixth generation, of *Richard Church*, one of the first settlers of *Hartford*. He was born at *Salisbury*, in the year 1794. His early literary advantages were chiefly confined to the district schools and public libraries of his native town. There are few better

That it was the duty of the county court to refer the petition to the county commissioners. The failure of the parties to agree as to the judgment that should be rendered, is to be taken for granted, until the contrary is shown by the record.

*Litchfield,*
July, 1849.

Harwinton
*v.*
Catlin.

*English* scholars than he was. He was also a proficient in mathematical studies.

In the spring of 1813, he commenced the study of law, in the office of his brother above-mentioned, with whom he continued, a most diligent and ambitious student, until he joined the law school in *Litchfield*, where he continued until he was admitted to the bar.

He soon afterwards opened his office in *Canaan*, where he remained until his death. Few young men have commenced professional life under so many disadvantages. It was, at that time, a most unpromising field. He was without friends or patronage; and was, for some years, subjected to a bitter opposition, which few men beside himself could have met and overcome. But opposition stimulated his efforts, and he was determined to succeed. When not absent on business, he was always to be found at his office, and at his books, although he had but few of them. Places of public resort or amusement, had no attractions for him.

For some years of the early part of his practice, he was in the habit of preparing all his causes for trial, with great care—those even in a justice's court, as well as in the higher tribunals. He always understood his adversary's case, and was seldom taken by surprise. Another peculiarity of his early practice, was, always to attend the courts in his county; and it was remarked of him, that he was the first in the court-house, at the commencement of a term, and the last to leave it; regardless too, whether his business would pay his expenses or not. He often remarked, that this was the great secret of his success; and that a young lawyer, who was not a constant observer of the business of the courts, would never succeed.

He read but few elementary books of his profession; *Coke on Littleton*, *Blackstone's Commentaries* and *Chitty on Pleadings* furnishing nearly the whole. But *reported cases* he studied with great care, and always read them with his pen in his hand, treasuring up every principle worthy of preservation, involved in them. In this way, he laid the foundation of his subsequent distinction as a lawyer. For several years before his death, he was engaged in a very laborious and extended practice, equal perhaps to that of any other lawyer in his county.

His habits of thought were intense, and often oppressive, so that he resorted much to novel-reading, as he said, "*to stop thinking.*"

As a public speaker, he was fluent and perspicuous. Of all advocates, he was apparently the least dependent upon preparation. He seemed to throw out his thoughts, without premeditation. His unadorned diction and inartificial method certainly bore no marks of study. And yet, as already suggested, he was a diligent student, and habitually prepared his causes in the most thorough manner. His peculiarities resulted, primarily, from the original cast of his mind; but they were probably cherished from choice. He chose to appear to be, what nature had made him. He never appealed to the passions, in his addresses. He sometimes indulged in wit, or pleasantry, but generally confined his efforts to close argumentation. The severity of

*Litchfield,*
July, 1849.
—————
Harwinton
*v.*
Catlin.

2. That the testimony of *Gaylord*, was properly rejected. It was offered, to prove a fact respecting the roads in *Harwinton ;* but the powers of the county court are confined to an enquiry into the conduct of the commissioners. If *Gaylord* had been offered to show what was proved to the commissioners, for the purpose of showing irregular or improper conduct, the testimony might have been relevant ; but the fact offered to be proved, has no connexion whatever with the only enquiry that the county court is authorized to make.

3. That there is no such defect in the finding of the court, as to render the proceeding irregular and erroneous. The remonstrance states a variety of facts ; and the plaintiffs in error say, that there is no distinct finding on each of these facts, nor any general finding which reaches all of them. To this the petitioners reply, first, that the finding and judgment of the court are entitled to a favourable construction in support of the judgment, both on common law principles, and also under the statute on that subject. Secondly, the court intended to make, and did make, a special finding, in regard to the matters embraced in the remonstrance ; and where the court says, in relation to these matters, that *certain* facts were proved, and are true ; it necessarily follows, that these were the *only* matters proved and found true ; and no general negation of the residue, is necessary. Thirdly, all the matters embraced in the remonstrance, other than those specially found, are inconsistent with the report ; and are, therefore, negatived, by the finding. Fourthly, if otherwise, the matters in the remonstrance other than those

an adversary never disturbed him ; but when he had a debt of this sort to pay, his retorts were severe and withering. In his professional consultations and advice, he was frank, and never concealed from his clients the difficulties in their way. He therefore bore defeat, and prepared them to bear it, with great composure.

He depised all appearance of foppery, and could hardly conceal his contempt of those who indulged in it. It is not surprising, therefore, that in his personal appearance, his dress and equipage, he was negligent—perhaps even to a fault.

His integrity of purpose appeared in all that he did ; and nothing could divert him from what appeared to be his duty. To the court he was always respectful. Though often familiar and sometimes jocose, he was careful never to give offence, but was, on the contrary, a favourite with the judges. To his profsssional brethren he was courteous and kind.

specially found, are wholly immaterial, or consist of averments not transversable.   Fifthly, none of the matters in the remonstrance amount to irregular or improper conduct, which is the sole ground that will authorize the county court to set aside the report of the commissioners.

ELLSWORTH, J.   The first error assigned, is, that the petition, on its face, is insufficient.   No defect was pointed out, on the trial; and we have discovered none, since.

The second error assigned, is, that the county court had no right to refer the petition to the county commissioners, inasmuch as it does not appear but the parties agreed as to the judgment to be rendered.   The town of *Harwinton* regularly appeared in court, and agreed to the reference of the petition; which we consider as equivalent to a finding, that the parties did not agree as to the judgment to be rendered; for why else did they agree to a reference?   Besides, a reference is a thing of course—made peremptory by statute, "*unless the parties shall agree.*"   If then, they really agreed, the record should show it; the burthen of proof is on the plaintiff in error; and it is not enough for him to say, the record does not show, that they agreed.   We think, as already stated, it is fairly to be inferred from the record, that the parties did not agree.   The contrary certainly does not appear.   So too, the objection comes too late, after the petition was referred to the commissioners, the second time, by mutual consent.

The third error assigned, is embraced in the second, as we understand it; and is therefore answered, by what we have already said.(*a*)

The fourth error is, that the county court, upon the hearing of the remonstrance to the commissioners' report, refused to hear *J. J. Gaylord*, offered by the defendants, to testify, that there was a better route for a road, than the one laid out.   The question of necessary highways, and where they can best be laid, belongs exclusively to the county commis-

(*a*) In the assignment of errors, the third error is, " that it does appear, from said record, that said county court had no power to refer said petition to said county commissioners, at its *April* term, 1846."

sioners; and why then should the county court hear testimony on these points? The language of the statute is, " and no trial as to the necessity and expediency of laying out or altering such highway, shall be had before said county court." To have received the testimony would have been useless, as no question was before the court. If the evidence was offered to show, that the commissioners acted corruptly, or erroneously upon their own principles, and so, the report should be rejected, we think the bill of exceptions fails to present that point, with sufficient clearness for us to act; nor do we mean to say, the county court had clear jurisdiction to revise and reject the report, even if the question had been fairly presented.

The fifth error is, that the county court did not answer the whole issue closed. We think a careful examination of the record will show this objection is not well founded. All issuable matter is decided, by the court, in its determination.

These are all the errors especially assigned in the writ of error; and of course, all we can with propriety decide. The argument, it is true, took a somewhat wider range; but were we to follow the counsel, our decision would not be in any degree changed; for the further objections are either founded in a misapprehension of the facts on the record, or are questions of law, readily and satisfactorily answered.

In this opinion the other Judges concurred, except WAITE, J., who was not present.

Judgment to be affirmed.